UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
DIVISION

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

    Plaintiff,

v.                                          Case No. 8:25-cv-00551-JSM-CPT

FREE SPEECH FOUNDATION, INC.
D/B/A AMERICA'S FRONTLINE
DOCTORS, SIMONE GOLD, KEVIN
JENKINS, and TRENT LOOS,

    Defendants.

---

## MOTION

**(1) TO PLACE FREE SPEECH FOUNDATION, INC. INTO RECEIVERSHIP PENDING THE JUDGMENT OF THIS COURT; OR**

**(2a) TO STRIKE PETER TICKTIN'S DESIGNATION AS LEAD ATTORNEY FOR DEFENDANT FREE SPEECH FOUNDATION, INC. (D/B/A AMERICA'S FRONTLINE DOCTORS) AND (2b) TO DESIGNATE RACHEL RODRIGUEZ AS LEAD ATTORNEY, OR**

**(3) IN THE ALTERNATIVE, TO ALLOW TWO DESIGNATIONS OF LEAD COUNSEL *CONTRA* LOCAL RULE 2.02(a).**

Defendants Trent Loos and Free Speech Foundation, Inc. dba America's Frontline Doctors ("AFLDS," generically, and "Loos AFLDS" when referring to Mr. Loos's putative and asserted control over AFLDS), by and through Rachel L.T. Rodriguez, Esq., hereby move the Court for relief as follows:

1

## INTRODUCTION

As an initial matter, movants incorporate by reference their introduction set forth in their opposition to Defendant Gold's motion to disqualify Rachel Rodriguez and their cross-motion to disqualify Peter Ticktin. *See* Dkt. 41.

The crux of this case is that Plaintiff Philadelphia Indemnity Insurance Company (PIIC) seeks to determine who actually controls Defendant Free Speech Foundation, Inc., doing business as America's Frontline Doctors (AFLDS). *See generally* Compl., Dkt. 1. This Court has already determined that PIIC's claims are well-pleaded and that "[w]hile the moving Defendants argue that Gold controls AFLDS, this is a disputed fact." Order (denying motion to dismiss), Dkt. 33, at 2 (May 20, 2025).

Because Gold was the first natural person defendant to appear in the case, her attorney Peter Ticktin also took the opportunity to designate himself as lead counsel for AFLDS ("Gold AFLDS"). Dkt. 18. But this designation goes to the heart of the case itself, *viz.*, who controls AFLDS? Gold says she does, so her attorney now purports to represent AFLDS (Gold AFLDS).

Conversely, when Loos appeared in this case, his attorney Rachel Rodriguez filed a notice of appearance both for him and for AFLDS, given that Loos also purports to control AFLDS as the sole remaining board member (Loos AFLDS). Dkt. 27. Accordingly, Rodriguez filed an answer to PIIC's complaint on behalf of Loos and AFLDS. Dkt. 30. Gold (through Ticktin) has characterized this answer as "unauthorized" (Dkt 37), but again this unsubstantiated characterization goes to the

2

heart of this case. Trent Loos can cite to the provenance of his authority from the inception of AFLDS to the current day. See *FSF, Inc. v. Jenkins*, Pasco County, Case No. 2023-CA-004676, Motion to Dismiss by R. Rodriguez, September 19, 2024, at 4–6 with citations to public and organizational records, and see Motion for Protective Order with Exhibits, filed July 22, 2024. To be fair, this also falls within the ambit of the principal dispute.

This confusion has now begun to seep into this Court's administration of justice as the lead designation of counsel of Ticktin on behalf of AFLDS apparently has been accepted under Local Rule 2.02(a), merely as the first filing attorney. *See* e.g. Dkt. 35 failing to specify party, Dkt. 39. But Rule 2.02(a) does not at all contemplate when multiple lawyers may appear in conflicted representation for the same putative client at the behest of natural persons claiming oppositional control of that client.

### ARGUMENT

**A. This Court should place AFLDS into receivership to secure the just, speedy, and inexpensive determination of this proceeding.**

The most effective way of resolving the fundamental dispute of this action and to prevent ongoing docketing confusion about who is control of, and which attorney represents, AFLDS would be for the Court to place AFLDS into the hands of a capable receiver.

There is no impediment to this Court ordering such an appointment. First, Federal Rule of Civil Procedure 66 contemplates federal court appointment of receivers and ongoing supervision over receiverships. The appointment of a receiver here

would enable the just determination of this case, in part because the appointment of a receiver occurs in equity as "an ancillary remedy which does not affect the outcome of the action." *Nat'l Partnership Inv. V. Nat'l Housing Dev.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (citing *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923)). "A receivership is not final relief. The appointment determines no substantive right; nor is it a step in the determination of such a right." *Pusey & Jones*, 261 U.S. at 497. Instead, a receivership "is a means of *preserving property* which may ultimately be applied toward the satisfaction of substantive rights." *Id.* (emphasis added).

    To wit, the ability to sue and be sued—to defend in its own name as a natural person would, is a fundamental property of corporations throughout the United States—particularly in Arizona and Florida. *See* ARIZ. CONST. art. 14, § 1; Fla. Stat. § 607.0302(1). Given the confusion and fundamental dispute about its ongoing control—a federal receivership would guarantee the preservation of AFLDS's fundamental property right in its maintenance of this lawsuit in the most orderly fashion possible (while Defendants Gold and Loos (and Jenkins) continue to respond to PIIC's claims). Accordingly, Arizona law contemplates the appointment of a receiver on a generalized basis. Ariz. Rev. Stat. § 12-1241 ("The … court … may appoint a receiver to protect and preserve property or the rights of parties therein, even if the action includes no other claim for relief."). This may certainly include receivership of a company while the right to control it is being adjudicated. A receiver of AFLDS could appoint any competent attorney it chooses, thereby eliminating the confusion that would otherwise arise here.

Of further utility is the fact that Rule 66 makes it clear that once a receiver is appointed, this action "may be dismissed only by court order."

The control-status of AFLDS has been at direct and indirect issue in more than several prior and pending cases—all without final resolution. One, in *Simone Gold v. Joseph Gilbert et al.*, Case No: 2022-015525 (Sup. Ct. Maricopa County, Ariz. Nov. 23, 2022), Simone Gold first attempted to wrest control of AFLDS after resigning from AFLDS's board of directors and serving a six-week federal prison sentence in 2022. *See U.S. v. Strand et al.*, Case No. 1:21-cr-00085-CRC-2 (D.D.C. Feb. 5, 2021) (sentencing of 60 days' imprisonment and one year of supervised release by Judge Cooper on June 16, 2022). After an evidentiary hearing for a preliminary injunction, Judge Thomason of the Superior Court of Arizona for Maricopa County quite explicitly determined that Gold had resigned and that any notion that her resignation was conditional was absurd. *Gold v. Gilbert, et. al.*, Maricopa County, Case No: 2022-015525, Minute Entry Order, at 17 filed January 30, 2023. Thereafter, Gold disregarded the findings of Judge Thomason, necessitating Loos AFLDS's entry by counsel appointed by PIIC of an *Application for Appointment of a Receiver* for the organization. See Application filed June 12, 2023. However, the case was never brought to conclusion in final judgment because Gold purported to enter into a settlement agreement with some alleged, but not current, stakeholders of AFLDS in order to strategically dismiss the case, presumably because its initial findings of fact were so unfavorable to her position. *Gold v. Gilbert, et. al.*, Maricopa County, Case No: 2022-015525, Order of Dismissal, filed May 7, 2024.

Two, AFLDS sought to recover the $3.6million asset of the Naples property purchased by Gold, using AFLDS funds, without Board approval in *FSF, Inc. v. Gold, et. al.*, Collier County, Case No. 2023-CC-000538 (filed March 14, 2023). Gold defended that case for eviction and unlawful detainer predominantly by threatening counsel for AFLDS with sanctions for continuing the case against her and her boyfriend, John Strand and claiming the organization was run by her and did not authorize the suit. See Dkt 41-1 Declaration of R. Rodriguez.

Three, on April 4, 2023, Gold sued Joey Gilbert, Kevin Jenkins, and then AFLDS Board member Cordie Williams in Pasco County, Florida for defamation. See *Gold v. Gilbert, et. al.*, Pasco County, Case No. 2023-CA-003071. The basis for her defamation claims arise from Gold's narrative of AFLDS authority and control, in direct opposition to the factual findings of Judge Thomason in Maricopa County in *Gold*, Case No: 2022-015525. Defendants have raised in their defenses facts which challenge Gold's unsubstantiated narrative of ongoing command and control of AFLDS.

Four, Gold "as President of FREE SPEECH FOUNDATION, INC.," purportedly in conjunction with Gold AFLDS sued Plaintiff PIIC in the District Court for the District of Nevada on September 8, 2023, for claims arising from PIIC's coverage of Loos AFLDS officers and directors. Gold again asserted her unsubstantiated narrative of her ongoing control of AFLDS as factual underpinning for her claims in Nevada.

Five, Gold purporting to control AFLDS sued Kevin Jenkins in *FSF v. Jenkins*, Pasco County, Case No. 2023-CA-004676 (filed October 31, 2023) to seek an accounting of organizational funds. In April of 2024, Gold served third-party subpoena on Ms. Rodriguez for privileged documents pertaining to her representation of AFLDS. She filed motions for protective order against production of these documents, asserting that the Plaintiff Gold AFLDS was not her client, and thus production would breach her ethical obligation to maintain attorney-client communication privilege. The court in Pasco County granted Rodriguez an evidentiary hearing on the issue of control of AFLDS in order to rule on the Protective Order and Rodriguez's Motion to Dismiss for lack of subject matter jurisdiction. Gold then withdrew the subpoena, and ultimately, the entire case. See Dkt 41-1, Declaration of R. Rodriguez.

Finally, Rodriguez learned that former AFLDS chairman Aaron Lewis had defamed her through an "Open Letter" he published, and which Gold's boyfriend John Strand republished to 40,000 people. *See generally* First Amend. Compl., *Rodriguez v. Lewis*, Case No. 9:24-cv-80983-WM, Dkt. 83 (S.D. Fla. June 12, 2025). In this pending case, counsel for Lewis called into question the control of AFLDS and who might be able to speak on the organization's behalf with respect to potential issues of privilege. *See generally* Motion for Protective Order, Case No. 9:24-cv-80983-WM, Dkt. 68 (S.D. Fla. May 8, 2025). Although the court denied the motion as meritless, Order (denying Motion for Protective Order) ("Order Denying MPO"), Case No. 9:24-cv-80983-WM, Dkt. 79, at 3–4 (S.D. Fla. June 3, 2025), the ambiguity created

7

by the ongoing dispute about AFLDS's control demonstrates that it continues to spillover to other litigation, presenting an obstacle to the "just, speedy, and inexpensive determination" of various proceedings. *See* Fed. R. Civ. P. 1; Order Denying MPO at 4 ("[T]he Court will not delay this matter any further.").

Although it seems unlikely here at this time that PIIC would voluntarily stipulate to dismissal with the amount of policy benefits on the line, this Court's appointment of a receiver would absolutely preclude another strategic dismissal in which Gold retreats (here, by means of creative negotiated outcome as in Maricopa County *Gold v. Gilbert, et. al.*; elsewhere, unilaterally) to avoid collateral estoppel or *res judicata* on the issue of control of AFLDS.

Although AFLDS was formed and domesticated in Arizona, most of its business is and has been conducted in Florida. A receivership would also provide an orderly means of bringing finality to the question of control of AFLDS by avoiding or overriding conflict of laws questions that might otherwise arise in the appointment of a receiver or administration of a receivership, because appointment under Rule 66 would invoke "the primacy of federal law in the practice of federal receiverships." *Nat'l Partnership Inv.*, 153 F.3d at 1291–92 (holding "that federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction."). Because "that which the [state] statute[s] confer[] is merely a remedy, the statute[s] cannot affect proceedings in federal courts sitting in equity." *Cf. Pusey & Jones*, 261 U.S. at 499.

For these reasons, Defendants Loos and Loos AFLDS respectfully request this Court appoint a receiver to take control of AFLDS pending the outcome of this action.

### B. If, however, this Court does not appoint a receiver to AFLDS, it should strike Peter Ticktin's designation as lead attorney for AFLDS and instead order the designation of Rachel Rodriguez as lead attorney.

If this Court does not appoint a receiver but grants Defendant Loos's motion (and putatively AFLDS's motion pursuant to Loos's argument position on the control status of the organization) to disqualify Peter Ticktin as an attorney in this case, this Court should order the designation of Rachel Rodriguez as lead attorney for AFLDS. *See* Dkt. 41.

If, however, this Court does not disqualify Mr. Ticktin in this case with no receiver otherwise appointed, this Court should nevertheless order the designation of Ms. Rodriguez as lead attorney for AFLDS for the same reasons set forth in Loos's motion to disqualify. *See generally id.* Mr. Ticktin has demonstrated either, at best, a failure to make an "inquiry reasonable under the circumstances" the facts available in public record filings applicable to this matter, or, at worst, a willingness to make disprovable misrepresentations to the Court. *See* Fed. R. Civ. P. 11(b)(3)–(4).

Although Defendant Simone Gold may continue to choose any lawyer admitted to this Court to represent her, the fact that the control of AFLDS is in dispute necessitates that whomever is representing the organization, unlike Mr. Ticktin, is fas-

tidious in his or her candor to the Court and has not demonstrated a flagrant disregard for the applicable rules of court and the rules of professional responsibility. *See* Fed. R. Civ. P. 11(b), Local Rules 2.01(e), 3.01(g), R. Prof. Conduct 4-3.3(a), 4-3.4(g)–(h).

Accordingly, in the alternative to receivership, Defendant Loos (and putatively AFLDS) request that Rachel Rodriguez be ordered designated as lead attorney for AFLDS.

### C. If, however, this Court does not strike Peter Ticktin's designation as lead attorney for AFLDS, this Court should allow AFLDS to proceed with two competing designations of lead attorney, in contravention to Local Rule 2.02(a).

Understandably, there is no subsection in Local Rule 2.02 that governs the instance presented by this case where two different factions purport to control the same party-entity. *See generally* Local Rule 2.02.

Because the very control AFLDS, including by definition the right to hire counsel to appear and defend it in this Court, is at issue, the natural Defendant first to file (in this case, Simone Gold) should not be presumed to have the sole right to designate lead counsel for the organization and bind it through that lawyer's signature or filings. Given that there are already multiple filings on this case's docket where one party or another is purporting to represent AFLDS through different counsel, another solution would be to allow both lawyers to serve as their clients' version of AFLDS's lead counsel.

Although this does not comport with Local Rule 2.02(a), the Local Rules allow the temporary suspension of most local rules "[i]f reasonably necessary to achieve the purposes of these rules." Local Rule 1.01(b). The purposes of the Local Rules are to "advance efficiency, consistency, convenience, and other interests of justice."

Because the primary issue in this case is who controls AFLDS, allowing two lead counsel designations from the opposing factions by way of order to the Clerk, will advance more consistency and efficiency than to let a unilateral designation of lead counsel by the party first to file stand. Accordingly, in further alternative, Loos and Loos AFLDS respectfully request this Court allow two lead counsel designations in contravention of Local Rule 2.02(a) as set forth above.

## **LOCAL RULE 3.01(g) CERTIFICATION**

I, Rachel L.T. Rodriguez, undersigned counsel on behalf of Defendants Loos and Loos AFLDS, certify that I conferred with counsel for all parties regarding their clients' position with regard to this Motion. As of the time of filing, Defendant Jenkins' counsel indicated no objection to this motion. No other counsel for remaining parties in this case have indicated their clients' positions.

This 25th Day of June, 2025.

Respectfully Submitted,

__/s/ Rachel Rodriguez___
VIRES LAW GROUP, PLLC
Rachel Rodriguez
FL Bar # 110425
515 N. Flagler Dr., Ste 350
West Palm Beach, Florida 33401
561-370-7383 (phone)
rrodriguez@vireslaw.group (email)

*Counsel for Defendants Loos AFLDS and Trent Loos*